IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
**Wheeling**

**CHARLES D. TIBBS,**

   Plaintiff,

v.              **CIVIL ACTION NO. 5:19-CV-279**
                Judge Bailey

**WELDED CONSTRUCTION, L.P.,**
a Delaware Limited Partnership;
**TRANSCANADA USA SERVICES,
INC.**, a Delaware Corporation;
and **JOHN DOE ENTITIES 1-10,**

   Defendants.

## MEMORANDUM OPINION AND ORDER DENYING TRANSCANADA USA SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

   This matter is now before this Court for consideration of Defendant TransCanada USA Services, Inc.'s ("defendant TransCanada") Motion for Summary Judgment [Doc. 89] and accompanying Memorandum of Law in Support [89-1]. Plaintiff filed his Memorandum in Opposition [Doc. 91] on June 28, 2021. Defendant TransCanada filed a Reply [Doc. 92] on July 8, 2021. Accordingly, this matter is ripe for adjudication. For the reasons contained herein, the Motion for Summary Judgment will be denied.

## BACKGROUND

   This lawsuit stems from an incident that occurred on the Leach Xpress Pipeline ("LXP") project in Marshall County, West Virginia, on September 1, 2017, when plaintiff Charles Tibbs ("plaintiff"), while working as a laborer for co-defendant Welded Construction ("defendant

1

Welded"), sustained injuries while in the process of loading a 6000-pound hammer drill onto the bed of a winch truck. *See* [Doc. 89-2 at ¶¶ 8, 11 & 12]. Defendant TransCanada is the owner of the approximately 160-mile Leach Xpress Pipeline, while defendant Welded was a contractor that was providing construction services on the project pursuant to a General Services Agreement ("GSA") entered into between defendant Welded and a parent company of defendant TransCanada. *See* [Doc. 89-3].

The GSA provides several stipulations relevant to the pending Motion. Pursuant to the GSA, defendant Welded was responsible for initiating, maintaining, and supervising "all safety and health, loss control measures, precautions, and programs required in connection with the Work, including any safety or health programs required by the Occupational Safety and Health Act and applicable regulations, and including [defendant TransCanada's] safety and security requirements applicable to the Site and the services being performed." [Id. at 11–12]. Defendant Welded was also responsible for the "prevention of accidents and for conducting site inspections and enforcing compliance with all safety and health programs with appropriate disciplinary action." [Id. at 12]. The GSA further provides that defendant Welded was obligated to:

> undertake and implement all safety measures, precautions, and programs, including any special precautions which may be required due to hazardous or otherwise dangerous parts of the Work and . . . provide all necessary protection to prevent damage, injury or loss to:
>
> > (i) All persons performed the Work and all other persons who may be affected by the Work;

2

>> (ii) All the Work and all materials and equipment whether in storage on or off the Site, under the care, custody or control of [defendant Welded] or its Subcontractors or agents or Subcontractor's subcontractors or agents; and
>
>> (iii) Other property at the Site or adjacent areas . . . .

[Id.].

Plaintiff's hiring process with defendant Welded commenced when he received a call from a person "out of the Union Hall" in summer 2017 who asked him if he was interested in working for defendant Welded on the Leach Xpress Pipeline. See [Doc. 89-8 at 38:17–39:14]. Defendant Welded initially hired plaintiff to do "environmental work," but plaintiff was informed by defendant Welded shortly after arriving on the worksite that he would be working on a winch truck. [Id. at 42:17–42:24]. Defendant Welded had a number of different job sites on the Leach Xpress Pipeline, and plaintiff's daily tasks typically consisted of riding in a truck operated by co-worker and fellow defendant Welded employee Robert Brown to various sites on an as-needed basis. [Id. at 62:10–62:20]. Plaintiff testified that he performed whatever tasks Brown told him to perform, and that Brown report to Pat Horan, another defendant Welded employee. [Id. at 62:19–62:23].

On September 1, 2017, plaintiff got into a winch truck with Brown and traveled to a location to pick up some items. [Id. at 70:8–70:15; 71:22–72:3]. Brown ultimately received a call about their next job, drove the winch truck to the site where the underlying incident occurred, and parked the truck on a graded slope. [Id. at 72:4–72:6]. One of defendant Welded's "straw bosses" explained that a rock hammer needed to be loaded onto the back

3

of the winch truck. [Id. at 76:7–76:13]. While several of defendant Welded's employees assisted in transporting the rock hammer to the bed of the truck by way of a side boom, plaintiff testified he was tasked with securing the rock hammer in the bed of the truck. [Id. at 77:9–77:13]. At some point after loading the rock hammer into the bed of the truck, the hammer began to slide, and plaintiff testified "being drug by it and it coming down, slamming, me hitting the ground." [Id. at 78:19–79:12; 80:9–81:15; 93:12–94:9; 94:24–95:6]. This injury forms the basis of the underlying suit.

Plaintiff initiated this action by filing a complaint in the Circuit Court of Marshall County, West Virginia, and defendants subsequently removed the action to this Court. See [Docs. 1 & 1-1]. In the complaint, plaintiff asserts a deliberate intent claim against defendant Welded and a negligence claim against defendant TransCanada. See [Doc. 1-1]. With respect to defendant TransCanada, plaintiff argues that defendant TransCanada was negligent by (1) failing to ensure that defendant Welded had the necessary job safety analyses and hazard training in place for plaintiff prior to permitting defendant Welded to work on the Leach Xpress Pipeline; (2) failing to properly supervise plaintiff on the date of the underlying accident; (3) failing to develop and implement proper job safety analysis and hazard training for tasks being completed under its direction; (4) failing to properly analyze equipment being used on its work site to ensure that it was safe and effective for the tasks at issue; and (5) failing to provide a safe workplace free of hazards routinely controlled in the industry. See [Doc. 89-2 at ¶ 20]. Subsequently, defendant TransCanada moved for summary judgment on plaintiff's negligence claims pursuant to Fed. R. Civ. P. 56, and this Court will address each argument in turn.

4

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c);

5

*Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted). Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Further, "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## DISCUSSION

### I. Defendant TransCanada's Motion for Summary Judgment and Accompanying Memorandum of Law

Defendant TransCanada asserts several arguments in support of its argument concerning summary judgment. First, defendant TransCanada argues there is no evidence that it failed to ensure that defendant Welded had the necessary job safety analyses and hazard training in place prior to the commencement of defendant Welded's work on the Leach Xpress Pipeline. [Doc. 89-1 at 11]. In support thereof, defendant TransCanada cites to a variety of safety-related documentation and deposition testimony concerning safety requirements it imposes on subcontractors, like defendant Welded, hired to work on the Leach Xpress Pipeline. [Id. at 11–15]. Based on these safety implementations, defendant TransCanada asserts that there is no evidence it breached any duty owed to plaintiff with

6

respect to job safety or hazard training because both these areas were responsibilities of defendant Welded. [Id. at 15].

Next, defendant TransCanada contends it did not breach a duty owed to plaintiff because it was not responsible for directly supervising him at the subject work site. [Id.]. In support, defendant TransCanada claims it was not directly involved in hiring plaintiff, nor did it ever directly assign plaintiff work tasks. [Id]. Moreover, defendant TransCanada notes that plaintiff's own testimony indicates that he never took any job direction from defendant TransCanada. [Id.]. Further, defendant TransCanada contends that plaintiff was not acting under its direction or control at the time of the subject incident. [Id. at 15–16].

Defendant TransCanada also avers it is entitled to summary judgment with respect to plaintiff's claims that it failed to properly analyze equipment being used on its work site to ensure that it was safe and effective for the tasks at issue. [Id. at 18]. In support, defendant TransCanada asserts that defendant Welded's "Project Safety Execution Plan" explicitly provides that defendant Welded was solely responsible for equipment inspection and equipment monitoring. [Id.].

Further, defendant TransCanada claims it is entitled to summary judgment because there is no evidence it acted negligently by failing to provide a workplace free of hazards routinely controlled in the industry. [Id. at 19]. Rather, defendant TransCanada asserts that the testimony and evidence in the record indicates that the allegedly dangerous conditions giving rise to plaintiff's injury were created and permitted by defendant Welded's employees rather than its own. [Id.]. As additional support, defendant TransCanada contends that its

expert testimony indicates that it fully complied with all OSHA requirements relating to the subject work site. [Id. at 19–20].

Finally, defendant TransCanada asserts that it is entitled to summary judgment with respect to punitive damages because there is no evidence in the record that it acted with "actual malice toward plaintiff or a conscious, reckless and outrageous indifference to the health, safety and welfare of others" as required by West Virginia law. [Id. at 21].

## II.  Plaintiff's Response

Plaintiff asserts three (3) arguments in opposition to defendant TransCanada's request for summary judgment. [Doc. 91]. First, plaintiff argues that defendant TransCanada owed to plaintiff a duty of care because it retained at least some element of control or supervision over the work that injured plaintiff. [Id. at 7]. Alternatively, plaintiff contends that even if the work plaintiff was performing at the time of his injury was not being directly overseen by defendant TransCanada, defendant TransCanada would still owe plaintiff a duty of care by virtue of the general control and supervision it maintained over the Leach Xpress Pipeline. [Id.].

Next, plaintiff contends that defendant TransCanada is vicariously liable for the negligence and failures on the part of various third-party inspectors tasked with enforcing various safety protocols at the work site because defendant TransCanada and the inspectors were situated in a "principal and agent" relationship. [Id. at 9].

Third, plaintiff argues that summary judgment is improper because the determination as to a breach of duty is a question of fact within the purview of a jury. [Id. at 10]. Additionally, plaintiff contends that punitive damages are an appropriate consideration for submission to

8

a jury because the facts demonstrate that defendant TransCanada acted with reckless and outrageous indifference to the safety of the workers on its site. [Id. at 12].

## III. Defendant TransCanada's Reply

In its Reply, defendant TransCanada reasserts its position that there is no evidence it failed to ensure that defendant Welded had proper safety procedures in place at the time of the subject incident. [Doc. 92 at 2]. Similarly, defendant TransCanada reasserts that it fulfilled its obligations as a controlling employer, and contends it was not responsible for directly supervising, controlling, or directing plaintiff at the time of the alleged injury. [Id. at 5–6]. Further, defendant TransCanada realleges that it did not breach any duty owed to plaintiff and asserts that there is no evidence that it acted negligently at the subject worksite. [Id. at 7–10]. Again, defendant TransCanada contends the record is devoid of any evidence warranting punitive damages or an instruction thereon. [Id. at 11].

## IV. Summary Judgment is Not Appropriate Given the Genuine Issues of Material Fact Present in the Record

Based on a review of the arguments asserted by the parties and the record as a whole, this Court is presently disinclined to grant summary judgment as requested by defendant TransCanada. As identified by plaintiff, the determination as to a breach of duty is a question of fact, which falls within the purview of a jury. See *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 165 W.Va. 689, 693, 271 S.E.2d 335, 339 (1980); *Bursztain v. United States*, 367 F.3d 485, 489 (5th Cir. 2004) ("[w]hether a defendant has breached a duty is a question of fact."). Here, the parties have presented a multitude of competing factual considerations concerning safety parameters, employment oversight direction, job site

management, and overall management at the Leach Xpress Pipeline. In construing these facts in the light most favorable to plaintiff, this Court finds that plaintiff's claims pose genuine issues which will be better resolved by a jury at trial.

This Court is similarly disinclined to grant defendant TransCanada's request concerning punitive damages at this phase of the litigation. This is not to say that plaintiff is necessarily entitled to a punitive damages award. Rather, plaintiff will have to present evidence to demonstrate that defendant TransCanada acted with reckless and outrageous indifference to the safety of the workers on its site to the jury for their consideration and determination.

## CONCLUSION

Based on the foregoing, defendant TransCanada USA Services, Inc.'s Motion for Summary Judgment [Doc. 89] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

DATED: July 29, 2021

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

10